## The Philadelphia Electric Co. v. City of Philadelphia.

*Francis B. Bracken,* for plaintiff.
*Joseph P. Gaffney,* City Solicitor, for defendant.

PER CURIAM, May 14, 1928.—The Philadelphia Electric Company alleges that it is a corporation organized under the laws of the Commonwealth of Pennsylvania for the purpose of supplying to the public in the City of Philadelphia and to persons, &c., residing therein or adjacent thereto electric heat, light and power; that it is authorized by law to erect and maintain the apparatus necessary for the carrying on of that business; and that, for this purpose, it has, subject to the consent of the Councils of Philadelphia, the right to enter upon any of the streets of the municipality.

It is averred that since its formation the plaintiff has been engaged in the business for carrying on which it was organized, and that, having first obtained the consent of City Councils, it has installed conduits for the protection of its electrical wires beneath the surface of many of the streets of the City, including Broad Street, between Columbia and Montgomery Avenues.

It is further alleged that the City of Philadelphia has begun to construct under Broad Street, from League Island northward to Olney Avenue, a subway, through which it intends to build and operate an underground railroad.

The plaintiff complains that the defendant has attempted to revoke all permits granted for the maintenance of underground or other structures within the lines of Broad Street that may interfere with the building of that

subway or the foundations thereof; that the defendant's officials have directed the plaintiff to remove its conduits laid beneath the east and west sides of Broad Street north of Columbia Avenue, although no provision has been made to compensate it for so doing; and that, in spite of the plaintiff's protests, the defendant has caused the work of constructing the subway to be so proceeded with as to render the plaintiff's conduits under the portion of Broad Street just mentioned useless, and to necessitate their relocation and reconstruction at a cost to the plaintiff of $5456.

For the recovery of that amount as damages for the injury caused it by the defendant's interference with its rights and franchises, The Philadelphia Electric Company has brought this action of trespass.

Many of the plaintiff's allegations of fact are admitted by the City of Philadelphia. The affidavit of defense, however, insists that City Councils had the right to revoke the consent accorded to the maintenance of the plaintiff's conduits beneath Broad Street as installed and to require their relocation at the plaintiff's expense without making compensation for disturbing them.

1. Because its consent to the plaintiff's entry upon its streets and the maintenance of conduits therein was given only upon condition that the plaintiff would comply with and observe all ordinances regulating the use thereof, one of which provided that if it becomes necessary in the laying of water or gas-pipes or any other municipal work to change the location of any conduit, it shall be shifted, at the cost or expense of the owners thereof, to such place as may be directed by the Board of Highway Supervisors.

2. Because, in order to obtain a license to open the City streets for the laying of its conduits, The Philadelphia Electric Company expressly accepted the then existing ordinances of Councils and the regulations of the Board of Highway Supervisors and specifically agreed to be bound thereby, one of such regulations providing that if the construction of water or gas-mains or any other municipal work necessitates the change of the location of any existing privately-owned structures occupying highways, their location shall be changed, at the sole expense of the owners, to such new locations as shall be directed by the board.

3. Because the streets of the City are under its control and it always has the right at any time to compel the removal of conduits or other obstructions that interfere with the use of the streets for public purposes (including the construction of subways) and their location elsewhere.

Upon the evidence produced, the court finds the facts of the case to be as follows:

### Findings of fact.

1. The Philadelphia Electric Company, plaintiff aforesaid, was organized and incorporated under the Act of April 29, 1874, P. L. 73, and the several supplements thereto, for the purpose of supplying heat, light and power by electricity to the public in the City and County of Philadelphia, and to such persons, partnerships and corporations residing therein or adjacent thereto as may desire the same; and the said corporation has since its organization been continuously engaged in the business of supplying heat, light and power by electricity to the public in the City and County of Philadelphia in accordance with the aforesaid purpose for which it was organized.

2. By the provisions of the Act of May 8, 1889, of the Commonwealth of Pennsylvania (P. L. 136), which was a supplement or amendment to the aforesaid Act of April 29, 1874, providing for the incorporation and regulation of electric light, heat and power companies, it is provided that companies incor-

porated thereunder for the supply of light, heat or power, or any of them, to the public by electricity shall, from the date of the letters-patent creating the same, have the authority to supply light, heat and power, or any of them, by electricity in the borough, town, city or district where it may be located, and to such persons, partnerships and corporations residing therein or adjacent thereto as may desire the same, at such prices as may be agreed upon, and the power also to make, erect and maintain the necessary buildings, machinery and apparatus for supplying such light, heat and power, or any of them, and to distribute the same, with the right to enter upon any public street, lane, alley or highway for such purpose: Provided, that no company which may be incorporated under the provisions of this act shall enter upon any street in any borough or city of this Commonwealth until after the consent to such entry, of the councils of the city or borough in which such street may be located, shall have been obtained.

3. By the terms of an Ordinance of Councils of said City of Philadelphia, approved Dec. 26, 1902, permission was granted to the plaintiff, the said The Philadelphia Electric Company, its successors and assigns, to enter upon, open, occupy and use all the streets and alleys of the City of Philadelphia for the purpose of constructing, maintaining and operating underground conduits, erecting poles and wires overhead, constructing the necessary manholes, cables and conductors, appliances and apparatus, and making connections with existing underground and overhead services and systems, and with abutting properties whose owners or lessees consent thereto, for the purpose of furnishing light, heat or power, or any of them, derived from electricity, to the public and to private individuals and corporations in and throughout the City of Philadelphia.

The following is a copy in full of the ordinance just referred to:

An Ordinance permitting The Philadelphia Electric Company, a corporation organized under the laws of the State of Pennsylvania, its successors and assigns, to construct and to acquire, to maintain and operate in, along, over, across, through and under all the streets and alleys of the City of Philadelphia, underground conduits, wires, manholes, poles, appliances and apparatus for the supply of light, heat and power by electricity, and authorizing other corporations organized to supply light, heat or power by electricity, to lease, sell or otherwise dispose of their property, rights and privileges in said City to the said The Philadelphia Electric Company, its successors and assigns.

Section 1. The Select and Common Councils of the City of Philadelphia do ordain, That permission be, and is hereby, granted to The Philadelphia Electric Company, its successors and assigns, to enter upon, open, occupy and use all the streets and alleys of the City of Philadelphia, for the purpose of constructing, maintaining and operating underground conduits, erecting poles, and wires overhead, constructing the necessary manholes, cables and conductors, appliances and apparatus, and making connections with existing underground and overhead services and systems, and with abutting properties, whose owners or lessees consent thereto, for the purpose of furnishing light, heat or power, or any of them, derived from electricity, to the public and to private individuals and corporations in and throughout the City of Philadelphia. And the Board of Highway Supervisors shall locate said conduits, wires, manholes, poles, cables and conductors, and all such work shall be done under the direction of the Electrical Bureau of the Department of Public Safety. The said company shall repave all parts of such streets as it shall break open, and restore the same to like condition to that before broken by said company, such repairing to be done in accordance with the specifications in use in the Department of Public Works for such streets, and to be guaranteed to be kept in good order for a period of five years, or, in the event of there being a guarantee by other parties for a longer period, then to the end of the term of such guarantee. The said company shall, at its own expense, and subject to the approval of the Chief of the Electrical Bureau of the Department of Public Safety, when and as it shall construct its own underground conduits, provide for the use of the City of Philadelphia for police, fire alarm, and telephone service, two con-

duits similar to those now in use by the City, with the necessary manholes for the same. The company is also hereby authorized to purchase, lease or otherwise acquire, and thereafter use, occupy, maintain and operate the underground conduits, wires, manholes, poles, and other apparatus and property, real and personal, rights and privileges belonging to or which may hereafter belong to any corporations authorized to furnish light, heat or power derived from electricity within the limits of the City of Philadelphia, said corporations being hereby authorized to sell, lease or otherwise dispose of the same to the said The Philadelphia Electric Company, its successors and assigns.

Before this ordinance shall go into effect or become operative in any way, said company shall give to the City its bond in the sum of fifty thousand dollars ($50,000), the form thereof to be approved by the City Solicitor, conditioned that the company shall faithfully comply with the provisions of this ordinance, as well as all other ordinances, regulating the construction, maintenance and extension of electrical conduits, poles, wires and lines, and license charges thereon, in the City of Philadelphia; and shall also, before exercising any of the privileges in this ordinance, pay fifty (50) dollars to the City Treasurer for printing this ordinance.

All ordinances or parts of ordinances, so far as the same are inconsistent herewith, are hereby repealed.

Approved the twenty-sixth day of December, A. D. 1902.

SAMUEL H. ASHBRIDGE,
Mayor of Philadelphia.

4. The plaintiff, in compliance with the condition of the said ordinance, furnished to the City its bond in the sum of $50,000, duly approved by the City Solicitor, conditioned as therein prescribed.

5. Acting pursuant to the authority given by the aforesaid Act of Assembly of May 8, 1889, and with the permission of the Councils of the City of Philadelphia, evidenced by the said Ordinance of Dec. 26, 1902, the plaintiff at large expense constructed under the surface of Broad Street, in said City of Philadelphia, certain conduits, manholes and cables for the purpose of conveying and distributing electricity for light and power in the said city, including the following:

(a) A conduit laid in the year 1910 under the east sidewalk of Broad Street, extending some distance north from the south side of Columbia Avenue. (A permit to open the pavement for the purpose of laying the said conduit was granted to the plaintiff by the Chief of the Bureau of Highways of said City on July 15, 1910, the plan therefor having been previously approved by the Board of Highway Supervisors.) The following is a copy of the permit:

No. 95. Department of Public Works, Bureau of Highways.
Philadelphia, July 15th, 1910.

Permission is hereby granted to The Philadelphia Electric Company to open the pavement

| On | From | To | At |
|---|---|---|---|
| Across Broad St. | S. W. Corner | S. E. Corner | 5' 4" N. S. C. L. |
| E. sidewalk of | S. S. Columbia | 57' N. N. H. L. | 9" E. E. C. L. |
| Broad St. | Ave. | Columbia Ave. | |

Approved 7–15–1910
W. M. McFADDEN,
H
Chief Draughtsman,

for the purpose of laying conduits and for the construction of necessary manholes and other contingent work as designated on plan approved by the Board of Highway Supervisors, the said Company to be responsible for any accident or damage which may occur by reason of said work, and to restore the street pavement to proper and satisfactory condition upon its completion.

W. R. BENSON,
Chief, Bureau of Highways.
(Finckel)

(b) A conduit laid in the year 1914 under the west side of Broad Street, from No. 1718 to Montgomery Avenue, a permit to open the pavement there-

for having been granted to plaintiff by the Chief of the Bureau of Highways of the said City on Sept. 11, 1914, pursuant to application therefor made by plaintiff.

(c) Conduits laid in March and April of 1916 under the west side of Broad Street, from Columbia Avenue to No. 1718 North Broad Street, a permit to open the pavement for the purpose of laying the said conduit having previously been given by the Chief of the Bureau of Highways of said City pursuant to the application of the plaintiff therefor.

The conduits mentioned in (b) and (c), supra, were laid under permits substantially similar in form in that under which conduit (a) was laid.

In the case of each of the conduits (a), (b) and (c), the application for the permit and the order therefor was made in the following form, or in a form substantially the same:

Department of Public Works, Board of Highway Supervisors,
City Hall, Philadelphia          September 10th, 1914.
To the President and Members of
To the Board of Highway Supervisors
Gentlemen:

"B." The Philadelphia Electric Company has presented to your Board a petition dated September 10th, 1914, requesting permission to open certain streets in which to install and maintain conduit and construct manhole. The following are the streets to be opened for which a permit is desired:

(1)

| Street | From | To | Location |
|--------|------|-----|----------|
| . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | | | |

(2)

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

(3)

| W. S. North Broad No. 1718 (No. 16437) | | Montgomery 12' 0" W. W. C. L. |

The above streets are not under guarantee, and as the proposed conduits will in no way interfere with any sub-structures, I recommend that a permit be issued in each case as requested.          Very truly yours,
E. F. SAXTON,
EFS–S                                        Supervising Engineer.

Rules and Regulations Governing the Laying of Electric Conduits.
Adopted by Board of Highway Supervisors.
Attest:   M. M. COPPUCK, Secretary.

Rules and Regulations of the Board of Highway Supervisors Governing Applications for the Laying of Electrical Conduits, Tubes and Manholes.
Adopted November 8th, 1906.

Section 1. Companies, corporations, firms or individuals applying under the general Ordinance of August 5, 1886, "Regulating the laying and construction of underground wires, electrical conductors, conduits, cables and tubes in the City of Philadelphia," shall file with the Board of Highway Supervisors:

1st. A. An application, in writing, giving full name of company, corporation, firm or individual, together with amount of capital, business address—the names of officers and directors with address.

B. The purposes for which they wish to use the streets.

C. Character of conduits, manholes, tubes, etc.

2nd. At least two copies of Linaura of plans, showing all existing underground structures and complete details of proposed constructions.

3rd. Such other information as may be required to enable the Board to reach a clear understanding of the whole subject.

Section 2. Before any street surface shall be broken, or a permit be issued (except as hereinafter provided), the following rules and regulations, and such additional rules and regulations as the Board of Highway Supervisors may from time to time adopt, shall be binding on the applicant or applicants.

1st. "A." The execution of bond, etc., to comply with general ordinance; "B," compliance with the ordinance granting special privileges; "C," compliance with the rules of the Board of Highway Supervisors.

2nd. A certificate from the City Solicitor that the necessary bond and agreement has been filed.

3rd. A certificate from the City Treasurer that the requisite payments have been made.

4th. An agreement from the Contractor who is under liability for the maintenance of any street desired to be broken, stating that the guarantee will in no way be affected by the breaking of the same.

Section 3. After the approval of the Board of Highway Supervisors and the issuance of the permit, the terms and conditions of the application and the accompanying plans shall not thereafter be altered or departed from without the consent of the Board previously obtained; except that in cases of emergency, the Chief of the Electrical Bureau may authorize modifications when necessary, reporting his action to the Board at its next meeting.

2nd. Where a conduit crosses a bridge, a plan shall be submitted to the Chief of the Bureau of Highways, and no conduit laid thereon until such plan is approved.

3rd. On undedicated streets the consent of the owner or owners shall be first obtained, and affidavits to that effect filed with the Board of Highway Supervisors.

Section 4. Before any street surface shall be broken, under a permit as above, notice must be given, in writing, by the receiver of the permit, to the Chief of the Bureau of Highways, and the Chief of the Electrical Bureau, of the time, place and extent of the proposed breaking; and where a conduit is located on the sidewalk, the District Surveyor shall be notified of the location and the date of commencing the work.

Section 5. 1st. No portion of any new structure, when in place in the street, except such as is designated to form a part of the street pavement, shall be less than two (2) feet below the surface of said pavement, except with the written approval of the Chief of the Bureau of Highways; and the tops of iron structures forming parts of the street pavement shall have a roughened surface with projections rising not less than one-half ($\frac{1}{2}$) inch, and spaced not more than two and one-half ($2\frac{1}{2}$) inches apart, as approved by the Board of Highway Supervisors. All manhole covers upon streets paved with asphalt, vitrified brick or wooden blocks shall be filled with asphaltum or other material to the satisfaction of the Department of Public Works.

2nd. New work and new structures shall not interfere with existing pipes, sewers, conduits or other structures, or their connections, except where absolutely necessary, and then only with the previous consent, in writing, of the Chief of the Bureau having charge of such structures. Any modification of existing structures found to be necessary must be made by or under the direction of the Bureau concerned and at the expense of the party having the permit. All necessary supports and protections to existing structures must be promptly supplied by, or at the expense of, the party having the permit, and to the satisfaction of the Bureau concerned. The said party shall erect and maintain and bear the expense of all necessary guards and danger signals, furnish all necessary watchmen to protect the public and the work during its progress, assuming all liability for accident or damage to persons or property that shall occur in the course of, or by reason of, said work, and agree to save harmless the City, its officers, agents and servants in all such cases.

3rd. When, in the judgment of the Board, it shall be deemed desirable to employ one or more special inspectors to supervise the work, such inspector or inspectors shall be appointed by the Director of the department having supervision over the same, and a sufficient sum deposited by the party receiving the permit, with the Chief of the Bureau, for the payment of such service.

Section 6. 1st. Openings in streets shall be made at such times and places, and be supported and guarded in such manner, as, in the judgment of the Chief of the Bureau of Highways, will least interfere with the rights and conveniences of others, and interrupt the traffic of the streets no more than is absolutely necessary.

2nd. Material and tools for construction must not be delivered in the street till needed for immediate use, and then must be so placed as to cause the least interruption to traffic. Not more than five hundred (500) feet in length shall be obstructed or occupied at the same time, without special authority of the Board.

Section 7. 1st. All openings in streets must be promptly filled with suitable material, free from rubbish and perishable matter, and thoroughly and evenly compacted throughout by ramming in thin layers while being put in, or by puddling. The pavement of street or footwalks must then be at once restored with the same character of material, equal in composition and color to match old work, in accordance with the standard specifications of the Department of Public Works, Bureau of Highways, for such class of work, and maintained in good condition,

satisfactory to the Department of Public Works, during the time of any existing guarantee, or as required by Ordinance of Councils, but in no case for a less period than five (5) years. All permits are issued subject to Ordinances of Councils regulating the paving and repaving of streets.

2nd. Surplus and condemned material must be removed and the street cleaned and entirely restored without delay.

Section 8. 1st. All subsurface structures, and all surface structures forming part of the streets, must at all times be kept in good repair. All work and material used in restoring or repairing the street shall be satisfactory to the Department of Public Works, and when notice calling attention to needed repairs is given, it must receive attention within twenty-four hours.

2nd. All work and material used in the construction of electrical conduits and manholes must be satisfactory to the Chief of the Electrical Bureau, and any work or material condemned by him must be at once made satisfactory.

Section 9. Immediately after the completion of the work, the party to whom the permit is issued shall file complete plans in detail to a scale satisfactory to the Board, showing the work as constructed, with all previously existing structures encountered during the construction of the work.

Section 10. Should work necessary to protect the public in the use of the streets be omitted or imperfectly performed by the party holding the permit, then after notice the Chief of the Bureau of Highways may cause the work to be done at the expense of the party receiving the permit. Failure at any time to fully and faithfully comply with these regulations and such further regulations as the Board may from time to time prescribe, or promptly pay such expense as hereinbefore or hereinafter authorized, shall at once work a forfeiture of permits issued, and debar the party from receiving any further permits until relieved by action of the Board of Highway Supervisors.

Section 11. Permits for electrical house connection for the construction of manholes on lines of underground conduits already constructed, where such construction is of advantage to the City or the betterment of the system, may be issued by the Bureau of Highways after approval by the Chief of the Electrical Bureau, without reference to the Board of Highway Supervisors. House connections shall follow the line of conduit and not cross streets diagonally.

Section 12. If, in the laying of water or gas pipes, sewers, or any other municipal work, it shall become necessary to change the location of any of the conduits, manholes or other structures, they shall be shifted or altered at the cost or expense of the owners to such places as shall be directed by the Board of Highway Supervisors.

2nd. Where the City constructs or reconstructs sewers or lays or relays water pipes, the Company shall maintain its conduits.

Section 13. No permit will be valid more than the number of days specified therein, which shall be determined by the Board of Highway Supervisors at the time the permit is authorized; for any subsequent work a new permit must be obtained.

Section 14. Persons in charge of any work on the streets must have in their possession, at all times while so engaged, the permit issued by the Department.

Section 15. All permits shall expire on December 31st of the year in which they are issued.

---

The Board of Highways Supervisors, City Hall, Philadelphia.

Gentlemen: Please approve of the following application of The Philadelphia Electric Co. for permission to open the streets to lay and maintain underground conduits and electrical conductors; to make house and pole connections and build manholes in the following streets:

| On | From | To | | At |
|----|------|-----|----|-----|
| . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | | | | |
| . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | | | | |
| West sidewalk | No. 1718 | Montgomery | 12' | W. W. C. L. |
| of N. Broad St. | | Ave. | | |
| | Plan No. 16437 | | | |

Material to be used as per attached plans.

By virtue of the provisions of the Ordinance approved Dec. 26th, 1902.

Respectfully yours,

THE PHILADELPHIA ELECTRIC CO.

By: WM. C. L. EGLIN,

2nd Vice-President.

598

Acceptance of Regulations, The Philadelphia Electric Company.

.............. having made application for permission to lay and maintain underground conduits and electrical conductors; to make house and pole connections and build manholes, . . . do hereby agree that such occupation shall be at its sole risk, and that the City shall in no case be liable for any claim for damages to persons or property resulting from any break in the streets, in sewers, City pipes, or other public structures; and do hereby further agree to make, at its own expense, all necessary alterations or renewals of inlets, stop boxes, lamp posts, telegraph or electric light poles, fire hydrants, or other structures, and to repave the streets displaced, from curb to rail, or of such widths as required by the Department of Public Works, or as specifically directed by Ordinance of Councils, and to give a satisfactory bond guaranteeing the maintenance of the pavement in good order and condition to the satisfaction of the Department of Public Works during the time of any existing guarantee or as required by Ordinance of Councils, but in no case for a less period than five (5) years, and accept and agree to be governed by the Ordinances of Councils and the rules and regulations of the Board of Highway Supervisors and such additional rules and regulations as the Board shall hereafter make.                    THE PHILADELPHIA ELECTRIC CO.
                                        By:   WM. C. L. EGLIN,
                                                2nd Vice-President.

Order for Permit.

To the Supervising Engineer of Permits of the Bureau of Highways:

The Board of Highway Supervisors has approved the application of The Philada. Electric Co. for permission to lay conduits as per plans presented in streets and locations and under provisos named in report of Supervising Engineer of Permits, Sept. 10th, 1914, hereunto attached, and you are hereby directed to issue a permit for the same.                                        M. M. COPPUCK,
                    Secretary of the Board of Highway Supervisors.

890:          Department of Public Works, Bureau of Highways.
                                        Philadelphia, Sept. 11th, 1914.

Permission is hereby granted to The Philadelphia Electric Company to open the pavement

| On | From | To | At |
|---|---|---|---|
| West side-walk N. Broad St. | No. 1718 | Montgomery Ave. | 12' 0 " W. W. C. L. |

Plan No. 16437

Passed by Board 9/11/14
Approved as to Location.
      WM. M. McFADDEN,
            Chief Draughtsman.

for the purpose of laying conduit and for the construction of necessary manholes and other contingent work as designated on plan approved by the Board of Highway Supervisors, the said Company to be responsible for any accident or damage which may occur by reason of said work, and to restore the street pavement to proper and satisfactory condition upon its completion.
                                        WM. H. CONNELL,
                                        Chief, Bureau of Highways.

6. Included in the said underground conduits constructed as aforesaid were two conduits constructed and laid by plaintiff for use by the City of Philadelphia, as provided by the terms of the said Ordinance of Dec. 26, 1902, in addition to the conduits constructed and laid for exclusive use by the plaintiff in supplying electricity in the City of Philadelphia.

Certain of the said conduits so laid for use by the City have been and are still being used by the City for its own purposes.

7. The said conduits have been, and still are, necessary parts of the transmission, distribution and utilization system of the plaintiff, and, together with the manholes and cables constructed in connection with the construction of the said conduits, are necessary apparatus for use in supplying light, heat and power from electricity to consumers in the City of Philadelphia, including the City itself, for street lighting. The plaintiff, since said conduits were

laid, has been in continuous possession and use thereof, excepting in so far as said possession and use have been disturbed, as hereinafter set forth.

8. The Board of Highway Supervisors of the City of Philadelphia was created by Ordinance of Councils of said City, adopted March 17, 1884, entitled:

"An ordinance to create a Board of Highway Supervisors for the purpose of preventing frequent and unnecessary opening of street pavements.

The exact terms of the said ordinance being as follows:

Section 1. The Select and Common Councils of the City of Philadelphia do ordain, That for the purpose of preventing frequent and unnecessary openings in street pavements, and to promote system and economy in repaving over breaks made for underground work, there shall be created a Board of Highway Supervisors.

Section 2. Said Board shall consist of the Chief Commissioner of the Highway Department, as President, the Chief Engineer and Surveyor, the Chief of the Water Department, the Superintendent of Police and Fire Alarm Telegraph and the Superintendent of Distribution of the City Gas Works.

Section 3. This Board, thus constituted, shall meet at least once in two weeks to consider all applications, ordinances and resolutions that may be referred to them, after the same has been approved by Councils; and they are hereby granted authority to prescribe and enforce such regulations and rules as they may adopt, governing the time and manner in which all street excavations shall be made, and the time and method of repairing over the same.

Section 4. It shall be the duty of all Departments, and Heads or Engineers of Departments, receiving applications to make openings in the public streets for any purpose; this Board shall decide the exact location, the manner and the time of making such openings, which decision shall be final.

Section 5. All ordinances and resolutions having for their object the accomplishing of any work that may render necessary the breaking of street pavements, may, before their final approval by Committees, be referred to the Board of Highway Supervisors for their action and approval. It shall be the duty of the said Board to act upon the matters so referred without delay, and return the same to the Committee with or without their approval.

Section 6. All ordinances, or parts of ordinances, inconsistent with this ordinance be, and the same are hereby repealed.

Approved the seventeenth day of March A. D. 1884.

SAMUEL G. KING,
Mayor of Philadelphia.

9. The Council of the City of Philadelphia, defendant, adopted an ordinance duly approved by the Mayor of said City, April 8, 1924, entitled:

An ordinance to authorize and direct the construction, improvement and equipment of certain transit facilities and the appointment of experts and certain other employees to be paid out of appropriations from loan funds; revoking permits for underground and other structures which may interfere with the construction of such transit facilities; and directing the Mayor to enter security for the payment of damages caused in carrying into effect the provisions of this ordinance.

By the provisions of said ordinance, the Department of City Transit of the said City was authorized and directed to advertise for proposals and to enter into a contract or contracts for the construction, improvement and equipment of certain transit facilities, including the construction, improvement and equipment of a subway railway in Broad Street, from League Island to Olney Avenue, in said city, said subway to be constructed in accordance with plans and specifications to be prepared by the Department of City Transit.

It was further provided in section 4 of said ordinance that "Any and all permits heretofore granted for construction of underground or other structures within the street-lines which may interfere with or be in the way of the said subways, tunnels, railways, elevated railways and other transit facilities or foundations thereof" should be thereby revoked.

The following is a copy of the ordinance whose title is above mentioned:

Section 1. The Council of the City of Philadelphia ordains, That the Department of City Transit be and the same is hereby authorized and directed to advertise for proposals and enter into a contract or contracts to the amount and extent of the funds hereinafter indicated toward the construction, improvement and equipment of certain transit facilities, together with any or all work appurtenant thereto, as follows:

Toward the construction, improvement and equipment of a subway railway in Broad Street, from League Island to Olney Avenue, with a four-track capacity at least from Spruce Street to Olney Avenue, with the necessary branch lines northeast and northwest from Broad Street; subway railway in Ridge Avenue, from Broad Street to Ninth Street; thence under private, City or public property to a point at or near Eighth and Race Streets; thence in Eighth Street to Walnut Street; Walnut Street from Eighth Street westward to a point at or near Twenty-first Street; under or over private, City or public property between said point and the point of crossing of the Schuylkill River at or near Chestnut Street; the building of a bridge crossing the Schuylkill River at or near Chestnut Street; across said bridge and under or over private, City or public property from the western end of said bridge to Chestnut Street; subway in Chestnut Street; thence to Forty-second Street; subway in Forty-second Street to a point at or near Woodland Avenue; thence elevated over Woodland Avenue to City Line; and the condemnation, acquisition and purchase of real estate and real estate easements in connection with such construction, improvement and equipment of the above-mentioned subway and elevated railways, bridges and other transit facilities.

Section 2. That the cost of the work hereinabove authorized, together with the acquisition of real estate and real estate easements in connection therewith shall be paid from the appropriation to the Department of City Transit for the aforesaid purposes out of the sixty-seven million two hundred and fifty thousand (67,-250,000) dollar loan (Item 300) authorized by Ordinance of October 5, 1923, and by the election held November 6, 1923, being the sum of fifteen million (15,000,000) dollars appropriated to the Department of City Transit by Ordinance approved January 24, 1924, for said purposes; and also out of the available and unexpended balances in Items Nos. 210 Loan to 217 Loan, inclusive, of a loan of sixty-seven million one hundred thousand (67,100,000) dollars borrowed or authorized to be borrowed by the City of Philadelphia with the assent of the electors given on May 6, 1916, and reauthorized by Ordinance approved December 30, 1919, for sixty-two million one hundred thousand (62,100,000) dollars thereof; and in Items Nos. 260 Loan and 261 Loan of a loan of thirty-three million (33,000,000) dollars borrowed or authorized to be borrowed by the City of Philadelphia with the assent of the electors given on November 2, 1920, certain purposes of which said two last named loans were changed by the authorization of the Council and by the assent of the electors given at an election held September 18, 1923, to the purposes hereinabove mentioned and set forth; the amounts so available out of the last named two loans for the foregoing purposes having been appropriated to Items 210 Loan and 260 Loan to the Department of City Transit therefor by Ordinance approved March 29, 1924, being the sum of forty-two million five hundred and fifty-nine thousand nine hundred and four (42,559,904) dollars and eighty-nine (89) cents.

Section 3. The said subways, elevated railways and other transit facilities shall be constructed in accordance with plans and specifications to be prepared by the Department of City Transit, and the Director of said Department is also authorized to appoint such experts, assistants, draftsmen, inspectors, engineers, clerks, accountants and laborers as may be requisite, and to pay all expenses for salaries, wages, borings, inspection, tests, transportation and incidental expenses not otherwise provided for out of the appropriation for the cost of the said work.

Section 4. Any and all permits heretofore granted for construction of underground or other structures within the street lines which may interfere with or be in the way of the said subways, tunnels, railways, elevated railways and other transit facilities or foundations thereof be, and the same are hereby revoked.

Section 5. The Mayor is hereby authorized and directed to enter security, on behalf of the City of Philadelphia, for the payment for any damages for which the City may be held liable, which may be caused in carrying into effect any or all the provisions of this ordinance.

Section 6. All ordinances or parts of ordinances inconsistent herewith be, and the same are hereby expressly repealed.

W. FREELAND KENDRICK,
Mayor of Philadelphia.

Approved the 8th day of April, 1924.

10. Pursuant to the provisions of the said ordinance, defendant, on July 24, 1924, entered into a contract with the Keystone State Construction Company, known as Contract No. 105-A, covering the construction of that portion of the four-track subway in Broad Street between Stiles Street and Dauphin Street, and caused the said contractor to proceed with the necessary excavations and other work in Broad Street necessary for the performance of the said contract in accordance with the specifications therefor prepared by the said Department of City Transit.

11. Although it was well known to the said Council of the City of Philadelphia and the said Department of City Transit that the said subway work included in the aforesaid contract with the Keystone State Construction Company could not be carried forward to completion in accordance with the said contract without interfering with the continued maintenance of the said conduits of the plaintiff and appurtenances thereto, hereinabove referred to as being laid in Broad Street, or without causing the destruction of the said conduits unless the same should be relocated at large expense, nevertheless, the City of Philadelphia made no provision for compensation to plaintiff for the removal and relocation of the said conduits, but, on the contrary, its specifications for the work under the said contract provided that structures belonging to franchise companies which interfered with the construction of the said subway should be relocated by the owner and without cost to the contractor.

12. Defendant, acting by said Department of City Transit, in order to carry into effect the purpose of the defendant to compel the removal by plaintiff at the sole cost of the latter of certain of the said above-described conduits of plaintiff, in order that the said subway work might be carried to completion in accordance with its contract with the Keystone State Construction Company, made demand upon plaintiff for the removal of certain of said conduits located on the east and west sides of Broad Street, respectively, north of Columbia Avenue, which occupied areas required for stairways and ventilation walls of said Broad Street subway, by letter dated Dec. 5, 1925, addressed to plaintiff, a copy of said letter being attached to plaintiff's statement of claim as Exhibit "G." Plaintiff replied to said letter on Dec. 18, 1925, denying the right of the defendant and said Department of City Transit to require the removal of the said conduits belonging to the plaintiff, for purposes of the said subway construction, without providing compensation to the plaintiff for the cost of said removal; a copy of the said reply being attached to plaintiff's statement of claim as Exhibit "H."

13. Disregarding the said protest of plaintiff, defendant caused the said Keystone State Construction Company, contractor, to proceed with the excavations and work incident to the construction of the said subway in such manner as to make useless said conduits and wires of plaintiff in their then present location under the surface of said Broad Street, and made necessary the reconstruction and relocation by plaintiff of conduits and wires in substitution for those thus rendered useless as aforesaid, in order thereby to maintain uninterrupted service to plaintiff's customers.

Plaintiff was obliged to expend, and did expend, in said reconstruction and relocation of the said conduits at Broad Street and Columbia Avenue, so rendered useless as aforesaid, the sum of $5456.

14. Defendant did not offer to pay or enter into an agreement with plaintiff for the payment of any damages occasioned to the plaintiff by the aforesaid injury to, or interference with, its wires and conduits so laid under the sur-

face of Broad Street, nor did defendant file any bond conditioned for the payment of said damages.

In the foregoing statement of the facts found the court has adopted substantially the language of the points submitted by counsel for the plaintiff suggesting findings on questions of fact. Those points, except in unimportant particulars, are affirmed.

The points submitted by counsel for the defendant in relation to matters of fact and the answers of the court thereto are as follows:

1. The conduits and structures of plaintiff here in question were laid under the City ordinances and permits granted by the Board of Highway Supervisors on application made by plaintiff. Answer: Affirmed.

2. In its applications for permission to lay the conduits in suit, plaintiff agreed to be governed by the ordinances of Councils and the regulations of the Board of Highway Supervisors and such additional regulations as the Board might thereafter make. Answer: Affirmed. This agreement, by necessary implication, however, refers to reasonable ordinances and lawful regulations.

3. Section 4 of the Ordinance of August 5, 1886, page 243, requires that all electrical conduits shall be laid under the rules and regulations of the Board of Highway Supervisors. This section was not repealed by the Ordinance of December 26, 1902, page 321, or any other ordinance, and always has been and still is in full force and effect. Answer: Affirmed, although it mingles conclusions of law with findings of fact.

4. The regulations of the Board of Highway Supervisors in effect at the time these applications were made in substance require that the location of the conduits must be changed at the expense of the owners whenever such relocation is made necessary by the construction of water or gas mains, sewers or any other municipal work. Answer: Affirmed. To the extent, however, that they relate to the incidence of the cost of changing the location of a conduit once formally permitted to be installed, the Regulations of the Board are of doubtful validity, since that subject is one over which the Board of Highway Supervisors was not given authority by the ordinance establishing it. The Board had no power of its own motion to annex new conditions to the consent of Councils to the plaintiff's use of the City streets. If it had authority over this subject, its regulations in respect thereto should have been reasonable; and, under defendant's interpretation thereof, the Board's regulations are unreasonable and, therefore, invalid.

5. Plaintiff was incorporated under the Act of May 8, 1889, P. L. 139, by the terms whereof plaintiff could not enter upon any street in the City of Philadelphia until after obtaining the consent to such entry of the Councils of the City. Answer: Affirmed.

6. By the terms of its consent Ordinance of December 26, 1902, page 221, plaintiff was compelled to comply with all other ordinances regulating the construction, maintenance and extension of electrical conduits. Answer: Affirmed.

7. In accordance with the terms of the said ordinance of 1902, plaintiff filed a bond conditioned on its compliance with all such other ordinances. Answer: Affirmed.

## Conclusion of law.

Upon consideration of the facts of the case as thus ascertained and of the law applicable thereto, the court has reached the conclusion, and so decides, that The Philadelphia Electric Company, in respect of the unlawful disturbance of its rights and franchise and the illegal interference with its property by the City of Philadelphia, should recover from the latter as damages the amount of the expenditures to which it has been thereby subjected, to wit, the sum of $5456.

The reasons for this decision may be stated as follows:

By virtue of the act of assembly in pursuance of which it was incorporated and of the Ordinance of City Councils approved Dec. 26, 1902, The Philadelphia Electric Company became vested with a franchise which gave it the right to enter upon the streets of the City of Philadelphia and to construct and maintain therein whatever appliances or apparatus were necessary or proper for carrying out its purpose of supplying to the public electrical light,

heat and power. The consent of Councils to this use of the City streets was given on condition. It was within the right of that body to annex a condition to its consent, and with whatever condition was thus imposed the plaintiff was bound to comply.

So long as the condition is complied with by the Electric Company its franchise is inviolable. It is, of course, like all private property, subject to be taken under a proper exercise of the police power by the Commonwealth or by the municipality as its delegate or under a lawful exercise of the right of eminent domain; but otherwise the plaintiff's franchise to occupy the streets for the purposes incident to its business cannot be enterfered with, always providing that the condition on which it holds it is duly observed.

The exercise of the City's right to control the streets, or, as it may be expressed, its police power, involves no duty to make compensation for results which involve loss to those whose property rights may suffer therefrom. No definition of the phrase "police power" can be formulated. It arises from the duty of the Commonwealth and certain of its agencies to provide for the health, the safety and the morals of the people. Under it, the Commonwealth or its authorized representatives may, within limits, without making compensation therefor, cause injury, loss or even ruin to a part of the community in the interest of a greater part. By its exercise, private property may be so regulated and controlled by the appointed agencies of the State that its use shall not be harmful to the members of the community at large. Regulation under a proper exercise of the police power is due process of law, not confiscation, even though property is thereby taken, injured or destroyed. Whether the subject attempted to be regulated is a proper subject for regulation, and, if so, whether the regulation attempted has exceeded the proper limits, are questions for the courts, whose duty it is to see to it that no arbitrary, unnecessary or unreasonable intermeddling with private property is perpetrated, even though the interference is labeled for the preservation of health, safety and general welfare. "The police power must be confined to matters having a substantial relation to the public good within spheres held proper." The public good, however, does not include a private business enterprise in which a municipal corporation embarks for profit, even when the profit of the enterprise may redound to the advantage of its taxpayers. The Act of 1913, under which the defendant is constructing the underground railway, to make way for which its officers caused the shifting of the plaintiff's conduits, provides for the assessment of damages for property taken thereunder, and thus indicates that the taking of such property is not by virtue of the police power. The interference by the City with the plaintiff's right to maintain its conduits under the streets clearly finds no warrant in that power.

The taking of private property by virtue of the right of eminent domain is subject to the duty that just compensation for the taking must be made, or provided for. Since it is clear that the defendant has not compensated or expressed a willingness to make compensation to the plaintiff for the results of its interference with the latter's property rights, its interference with them cannot be justified under the right of eminent domain and, consequently, amounts to a trespass.

The only defense upon which the City of Philadelphia can possibly rely for its course in this matter is that the plaintiff's right to maintain its conduits beneath the streets had ended because the contingency upon which a continuance depends has come about.

This involves the question as to what was the nature of the condition upon which the councilmanic consent to the construction of the plaintiff's system

for conveying electricity was predicated. To say that the condition of the Ordinance of 1902 was fulfilled merely by the payment of $50 for printing the ordinance and by the filing of the bond of The Philadelphia Electric Company for $50,000, conditioned for its compliance with the City ordinances, is to stick in the bark. The court has no power to make a new contract for the parties, but it is its duty to construe the ordinance referred to, and it is clear that that ordinance means that the consent thereby granted is to be operative only so long as the concessionaire obeys the City's legislation then in lawful effect or that might thereafter be legally enacted. One of the requisites to a valid ordinance is that it shall be reasonable. It is inconceivable that either the plaintiff or the defendant's councils intended that the former was to be subject to the risk of having the tremendous expenditures incurred in the installation of its system rendered useless by the withdrawal of the latter's consent, either for the purpose of destroying the plaintiff or to benefit the City at the plaintiff's expense.

In the opinion of the court, the Ordinance of 1886 was not repealed or superseded by that of 1902, except so far as the provisions of the latter are at variance with those of the former. The view that such a repeal was intended finds no support in the conduct of either of the parties to this cause.

The Ordinance of 1886 by its terms subjects all parties using the streets beneath their surface for construction purposes to regulation by the Board of Highway Supervisors. By this is meant lawful acts of regulation by that body. It does not include regulations beyond its power.

The authority vested in the Board of Highway Supervisors is set forth in the Ordinance of 1884 by which that body was created. It does not extend to so great a matter as the shifting of a whole system of electrical apparatus. The ordinance delegates to the board a reasonable power to regulate, which was all that Councils could themselves exercise. The board was given no authority to confiscate. The imposition of the cost of moving and relocating fifteen miles of conduits on the owners was something which the Ordinance of 1884 did not contemplate. The attempt to do so in the interest of the City's underground railway enterprise is without justification and is clearly unlawful. The plaintiff's seeming agreement to be bound by any such regulation gives it no validity. That agreement had reference only to lawful rules and regulations.

Each of the parties has submitted a series of points suggesting conclusions of law for the court's adoption. These, with the answers of the court thereto, are as follows:

### Plaintiff's requests.

1. Plaintiff, The Philadelphia Electric Company, under the provisions of the Act of Assembly of May 8, 1889, P. L. 136, acquired the right, franchise and privilege to enter upon the public streets of the City of Philadelphia for the purpose of erecting and maintaining apparatus for supplying light, heat and power by electricity, subject to the condition only that Councils of said City should consent to such entry. Answer: Affirmed.

2. The consent of the Councils of the said City of Philadelphia contemplated by the said Act of Assembly of May 8, 1889, was granted to plaintiff by ordinance of said Councils approved December 26, 1902, and upon the adoption of the said ordinance and the furnishing by plaintiff of the bond required by its terms, plaintiff became vested with the franchise and privilege to lay and maintain conduits, wires and other apparatus necessary for its franchise purposes in the streets of the said City of Philadelphia, subject only to the observance of the conditions imposed by the terms of the said ordinance. Answer: Affirmed.

3. The defendant, the City of Philadelphia, derived its authority to construct, own and operate transit facilities, including the construction of a subway in Broad Street, said City, from the Act of Assembly of the State of Pennsylvania, approved June 17, 1913, P. L. 520. Answer: Affirmed.

4. In constructing or operating transit facilities by virtue of the provisions of the said Act of Assembly of June 17, 1913, the defendant, City of Philadelphia, acts in a proprietary capacity and occupies the same position in respect to the said transit facilities as any private corporation endowed by the Legislature with rights and privileges similar to those conferred upon cities of the first class by the said Act of Assembly. Answer: Affirmed.

5. The defendant, City of Philadelphia, acting in its proprietary capacity in constructing the Broad Street subway under the authority conferred by the said Act of Assembly, had no legal right to encroach upon, interfere with or destroy the wires and conduits of plaintiff previously laid and maintained in said Broad Street, for the purpose of constructing transit facilities, without providing compensation for the damage or loss thus occasioned to the plaintiff, in accordance with the provisions of the said Act of Assembly. Answer: Affirmed.

6. In causing the destruction, removal or relocation of the conduits and wires of plaintiff laid and maintained in Broad Street in connection with the construction of a subway railway on said street, under the authority of the said Act of Assembly of June 17, 1913, without providing compensation to plaintiff for such interference with the plaintiff's franchise and rights to maintain the said wires and conduits, in accordance with the provisions of the said Act of Assembly, the defendant was guilty of trespass on the rights of the plaintiff and became responsible for the damages thereby caused to plaintiff. Answer: Affirmed.

7. Said Act of Assembly of June 17, 1913, provided the sole means whereby the defendant could lawfully require the removal and relocation, either temporarily or permanently, of the wires and conduits of plaintiff laid in Broad Street, City of Philadelphia, for its corporate purposes, and in causing the demolition and removal of said wires and conduits in connection with the construction of the subway in Broad Street without complying with the provisions of the said act, defendant was guilty of an unlawful encroachment upon the rights, franchises and privileges of the plaintiff in respect to the said conduits and wires. Answer: Affirmed.

8. The ordinance of Council of the City of Philadelphia, approved April 8, 1924, entitled "An ordinance to authorize and direct the construction, improvement and equipment of certain transit facilities and the appointment of experts and certain other employees to be paid out of appropriations from loan funds; revoking permits for underground and other structures which may interfere with the construction of such transit facilities; and directing the Mayor to enter security for the payment of damages caused in carrying into effect the provisions of this ordinance," in so far as it purported to revoke permits theretofore granted for construction of underground or other structures within the street lines which may interfere with or be in the way of subways or other transit facilities or foundations therefor, was invalid and amounted to an attempt to take the property of plaintiff as the owner of conduits and wires laid in Broad Street, City of Philadelphia, without due process of law. Answer: Affirmed.

9. The Ordinance of December 26, 1902, evidencing the consent of the City of Philadelphia to the entry of the plaintiff upon its streets for the purpose of laying wires and conduits therein for plaintiff's corporate purposes, contains no provisions which could be construed as reserving to the City of Philadelphia the right in its proprietary capacity to require the plaintiff, at its own cost and expense, to remove and relocate its wires and conduits in the streets of the said City in order to enable the said City to occupy the said streets for the purpose of carrying on the business of providing transit facilities or for any other private corporate purpose. Answer: Affirmed.

10. The Ordinance of August 5, 1886, of the City of Philadelphia, entitled "An ordinance regulating the laying and construction of underground wires, electrical conductors, conduits, cables and tubes in the City of Philadelphia," was superseded and repealed by the said Ordinance of December 26, 1902, in so far as it might otherwise be regarded as by its terms applying to the laying, construction and maintenance of wires and conduits by the plaintiff, pursuant to the consent of the City granted by the said Ordinance of 1902. Answer: Refused. The Ordinance of 1886, here referred to, did not delegate to the Board of Highway Supervisors authority or recognize any prior grant of authority to that body to abolish.

11. Said Ordinance of August 5, 1886, whether treated as repealed in whole or in part or superseded in whole or in part by the said Ordinance of 1902, contains no provisions authorizing the City of Philadelphia or any officer of Department thereof to require the removal or relocation by plaintiff, at its own expense, of conduits and wires laid by plaintiff in the streets of the City of Philadelphia, pursuant to the franchises granted by the Act of Assembly, coupled with the consent

of the City evidenced by the said Ordinance of 1902, for the purpose of enabling the said City in its proprietary capacity to construct transit facilities pursuant to the provisions of the Act of Assembly of June 17, 1913, P. L. 520. Answer: Affirmed.

12. Section 12 of the Rules and Regulations of the Board of Highway Supervisors, governing applications for the laying of electrical conduits, tubes and manholes, adopted November 8, 1906, providing that if, in the laying of water or gas pipes, sewers or any other municipal work, it shall become necessary to change the location of any of the conduits, manholes or other structures, they shall be shifted or altered, at the cost or expense of the owners, to such places as shall be directed by the Board of Highway Supervisors, cannot be construed as imposing any obligation upon the plaintiff to change the location of its conduits laid in Broad Street, either temporarily or permanently, in order to make way for the construction of transit facilities on said street by the City of Philadelphia, acting in its proprietary capacity, even though said regulations were accepted by plaintiff in connection with its application for a permit to open the streets in the laying of said conduits. Answer: Affirmed.

13. If the said regulation of the Board of Highway Supervisors could be construed as having for its purpose, among others, the placing of an obligation upon the plaintiff to remove, either temporarily or permanently, its conduits laid in the streets of the City of Philadelphia, for the purpose of enabling the City to make use of the said streets for the construction and maintenance of transit facilities in its proprietary capacity, said regulation must be treated as *ultra vires* and void, and plaintiff is not estopped from denying the validity of said regulation by reason of its general acceptance of the said regulations of the Board of Highway Supervisors in connection with its application for permits to open streets in order to lay conduits therein. Answer: Affirmed.

14. Plaintiff is entitled to a verdict against the City in the sum of five thousand four hundred and fifty-six dollars ($5456.00) as the amount of damages occasioned by the trespass of defendant in encroaching upon the right and privilege of the plaintiff to maintain its conduit in Broad Street. Answer: By reason of its loss through the wrong complained of, the plaintiff is entitled to recover damages against the defendant, and its award should be measured by the extent of the expenditures to which it was put by the defendant, viz., $5456.

## Defendant's requests.

1. Upon the issuance of the permits and the laying of the conduits by plaintiff, its application and agreement constituted a contract between plaintiff and defendant, which always has been and still is in full force and effect. Answer: Affirmed.

2. The regulations of the Board of Highway Supervisors were and are binding upon plaintiff. Answer: The plaintiff is bound by the Board's Rules and Regulations to the extent that they are authorized and reasonable. The Board was never empowered to regulate by abolishing the plaintiff's system in the interest of the City's private proprietary enterprise. Regulations of such a character, whether authorized by Councils or not, are invalid because unreasonable. The plaintiff's agreement to obey the Board of Supervisors' Rules and Regulations did not subject it to unreasonable and invalid rules.

3. The construction of the Broad Street subway is a municipal work within the meaning of the term as used in the regulations of the Board of Highway Supervisors. Answer: The words "Municipal Works" as here employed mean such works as sewers and water-pipe installed by the City in its public capacity. In constructing the underground railway, to prepare for which the subway was built, the City's acts were in its private or proprietary character.

4. Section 4 of the Ordinance of August 5, 1886, page 243, was not repealed by the Ordinance of December 26, 1902, page 321, or any other ordinance, and always has been and still is in full force and effect and binding on plaintiff. Answer: Affirmed.

5. By the terms of its consent Ordinance of December 26, 1902, page 221, plaintiff was and still is compelled to comply with all other ordinances regulating the construction, maintenance and extension of electrical conduits. Answer: Affirmed.

6. The Ordinance of August 5, 1886, page 243, is an ordinance regulating the construction, maintenance and extension of electrical conduits. Answer: Affirmed.

7. Plaintiff had no right whatever to lay conduits in the streets of the City of Philadelphia without the consent of the City. Answer: Affirmed.

8. The City of Philadelphia had the right to attach to this consent such conditions as it might see fit to impose. Answer: Affirmed.

9. The condition in the case at bar is not unreasonable, nor is it impossible of performance. Answer: To the extent that the condition involved a right on the part of the defendant to revoke, without compensation, the franchise of the plaintiff merely in the interest of a private business enterprise of the municipality, it would be invalid; but no such right as that asserted by the defendant was contemplated by the Ordinance of 1902.

10. Any rights which plaintiff may have in the City streets are subject to the superior right of the public as represented by the City, and the fact that compliance with the said condition would not result in an annulment or abrogation of the rights and functions of plaintiff in the City streets is an additional reason why it cannot now be heard to dispute the binding efficacy of such condition. Answer: Refused.

11. Having entered on the streets under the permit of the City authorities and having enjoyed the benefits thereof, the plaintiff cannot now raise questions of *ultra vires*, either on the part of its own officers or those of the City, so long as it continues to possess and exercise the rights and privileges so granted. Answer: Refused.

12. Having failed to object *in limine*, plaintiff cannot now question the legality or propriety of the condition, nor can it refuse to comply with such condition that it shall bear the expense of relocating its conduits. Answer: Refused.

13. The Act of June 17, 1913, P. L. 520, does not require defendant to condemn plaintiff's conduits or to pay for their relocation. Answer: Refused.

14. The City of Philadelphia is not liable to plaintiff for the cost of the relocation necessitated in this case. Answer: Refused.

15. Judgment on this record and testimony should be entered in favor of defendant. Answer: Refused.

It is ordered that the prothonotary shall file the foregoing decision in his office and forthwith give notice to the parties that it has been filed. If no exceptions are filed within thirty days after the service of such notice, the prothonotary shall enter judgment for the plaintiff in accordance therewith.

The argument dismissing the exceptions was heard by Finletter, P. J., and McCullen and Brown, JJ., who entered the following decree dismissing exceptions:

June 5, 1928. The exceptions of the defendant are dismissed, and judgment is entered for the plaintiff in the sum of $6261.66.

*Opinion.*

PER CURIAM, June 5, 1928.—The trial of this case on March 5, 1927, took place before all three of the judges of the court as then constituted, who united in the findings and conclusions made, in the judgment entered, and in the reasons given therefor.

The court, as at present constituted, has considered the exceptions, and, agreeing with the findings, conclusions and judgment of the trial court, and with the reasons given therefor, dismisses the exceptions, and adopts the opinion of the trial court as the opinion of the court *in banc*.